## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STEVEN MCLEOD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N11C-03-111 MJB |
| | ) | |
| HUGHEY F. MCLEOD | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**Submitted:** November 26, 2014
**Decided:** February 26, 2015

*Upon Defendant's Motion to Exclude Expert Testimony of Dr. Michael Gillum,*
**DECISION DEFERRED.**

*Upon Defendant's Motion to Exclude Expert Testimony of Dr. Marianne Barnes,*
**DECISION DEFERRED.**

## OPINION

Steven A. McLeod, *pro se*, 1050 Big Joe Road, Monticello, Florida 32344.

Cynthia H. Pruitt, Esq., Doroshow, Pasquale, Krawitz & Bhaya, Attorney for Defendant.

**Brady, J.**

1

# I. INTRODUCTION

This is a personal injury case. Plaintiff Steven A. McLeod ("Plaintiff") alleges that he was sexually abused as a child by his father, Defendant Hughey F. McLeod ("Defendant"), from approximately December 1967 through January 1972. Both parties were domiciled in Delaware at the time of the alleged abuse, but both parties now reside in Florida. Plaintiff is currently incarcerated in Florida. On April 29, 2011, Plaintiff filed the instant action under 10 *Del. C.* § 8145.

On May 5, 2014, Plaintiff filed his Rule 26 expert report.[1] In the report, Plaintiff identifies Dr. Michael Gillum ("Dr. Gillum") and Dr. Marianne Barnes ("Dr. Barnes") as Plaintiff's expert witnesses at trial and provides his own summary of the experts' expected testimony.[2] The experts themselves have not provided reports or affidavits. Defendant has now moved to exclude the testimony of both Dr. Gillum and Dr. Barnes on the grounds that neither expert's testimony meets the admissibility requirements of D.R.E. 702. For the reasons outlined below, the Court **DEFERS DECISION** on both Motions until after receipt and review of supplemental material from Plaintiff or the passage of 90 days without further submission from Plaintiff.

## II. ADMISSIBILITY OF EXPERT TESTIMONY

---

[1] Super. Ct. Civ. R. 26(b)(4)(A)(ii) requires a party, upon request through interrogatories, to "identify each person whom [that party] expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Defendant so requested of Plaintiff in Defendant's First Set of Interrogatories, filed August 16, 2013. Defendant's Interrogatories, Attachment to Item 76, Interrogatory #14.
[2] Plaintiff's Expert Report, Item 166.

The admissibility of expert testimony is governed by D.R.E. 702, which the Delaware Supreme Court has interpreted in keeping with the U.S. Supreme Court's decision in *Daubert*.[3] D.R.E. 702 provides:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[4]

The trial judge acts as "gatekeeper" and must assess proffered expert testimony in order to determine whether the testimony should reach the finder of fact.[5] In order for expert testimony to be admissible, it must be both relevant and reliable.[6] Relevance requires that the opinion "relate to an issue in the case and assist the trier of fact to understand the evidence or to determine a fact at issue."[7] Reliable evidence is "based on the methods and procedures of science, rather than subjective belief or speculation."[8] Specifically, reliability is determined by the court's examination of the non-exhaustive *Daubert*-factors, which include the opinion's testability, whether the opinion has been peer-reviewed, whether the opinion was formed

---

[3] *M.G. Bancorporation v. Le Beau*, 737 A.2d 513, 522 (Del. 1999) (adopting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

[4] D.R.E. 702.

[5] *Sturgis v. Bayside Health Ass'n Chartered*, 942 A.2d 579, 584 (Del. 2007).

[6] *Kapetanakis v. Baker*, 2008 WL 3824165, *3 (Del. Super. Ct. 2008) (*citing Price v. Blood Bank of Delaware, Inc.*, 790 A.2d 1203, 1210 (Del. 2002)).

[7] *Tumlinson v. Advanced Micro Devices*, 81 A.3d 1264, 1269 (Del. 2013).

[8] *Kapetanakis*, 2008 WL 3824165, at *3 (quoting *In re TMI Litigation*, 193 F.3d 613, 669 (3d Cir. 1999)).

independent of litigation, and whether the opinion is widely accepted.[9] The party who seeks to have expert testimony admitted bears the burden of establishing its relevance and reliability by a preponderance of the evidence.[10]

## III. PLAINTIFF'S EXPERT REPORT

### A. Procedural History

Before Plaintiff submitted his expert report on May 5, 2014, Plaintiff filed three motions related to his difficulties securing and conferring with an expert witness. On August 27, 2013, Plaintiff filed a motion asking the Court to appoint Dr. Richard Carpenter as an expert witness and order a telephone conference between Plaintiff and Dr. Carpenter.[11] Plaintiff also asked the Court to pay the expert fees or to order Defendant to do so.[12] Plaintiff argued that his indigence and the fact that he is incarcerated prevented him from retaining and communicating with the expert on his own.[13] On September 18, 2013, The Court denied Plaintiff's Motion for Appointment of Expert Witness and deferred Plaintiff's Motion for a Court Order to Obtain Telephonic Conference with Expert until Plaintiff retained an expert witness on his own.[14] On January 29, 2014, the Court issued a Scheduling Order setting May 2, 2014 as the deadline for Plaintiff to provide his Rule 26 expert disclosure to Defendant.[15]

---

[9] *Tumlinson*, 81 A.3d at 1270-73.
[10] *Kapetanakis*, 2008 WL 3824165, at *3.
[11] Motion to Appoint Expert, Item 82.
[12] Motion to Appoint Expert, Item 82, at 2.
[13] Motion to Appoint Expert, Item 82, at 1-2.
[14] Order, Item 87.
[15] Scheduling Order, Item 119.

On February 20, 2014, Plaintiff filed a Motion for Waiver of Discovery Fees, citing Rule 26(b)(4)(C), which provides that, under certain circumstances, the party seeking discovery must bear the costs.[16] On March 27, 2014, the Court denied the Motion, explaining that the provision in Rule 26(b)(4)(C) does not apply to a party's obligation to provide the opposing side with a Rule 26 expert report.[17]

On March 26, 2014, Plaintiff submitted a Motion asking the Court to rule on Plaintiff's deferred Motion for Telephonic Conference(s) between Plaintiff and his expert witness(es).[18] On March 27, the Court ruled that Plaintiff is permitted to have teleconferences with his experts, provided that the Florida authorities so permit, but the Court did not order that these conferences take place.[19] The Court reminded Plaintiff that he is still obligated to submit a Rule 26 expert report.[20]

### B. Plaintiff's Expert Report

Plaintiff's expert report was filed on May 5, 2014, shortly after the May 2, 2014 deadline.[21] Defendant did not object to the slight tardiness of the report. The report is a four-page document written by Plaintiff, and it does not include, either incorporated or as attachments, any reports or affidavits from the experts themselves. Plaintiff begins by reciting the requirements under Rule 26 that he identify all expert witnesses, state the subject matter on which they are expected to testify, give the substance of their expected testimony, and explain

---

[16] Motion for Waiver of Fees, Item 124.
[17] Order, Item 138.
[18] Motion for Ruling on Telephonic Conferences, Item 135.
[19] Order, Item 136.
[20] Order, Item 136.
[21] Plaintiff's Expert Report, Item 166.

5

the grounds for each opinion.[22] Plaintiff names Dr. Michael Gillum and Dr. Marianne Barnes as his two expert witnesses and provides contact information for each.[23] Plaintiff then gives a very brief "synopsis" of each expert's testimony.[24] Plaintiff says that Dr. Gillum will provide testimony about the "symptoms and indicators of sexual abuse on children at the time the abuse is occurring," as well as "[t]he effects of abuse during developmental stages of [*sic*] child's personality," and the lasting symptoms that victims of childhood sexual abuse experience as adults.[25] Plaintiff does not indicate that Dr. Gillum will provide any specific testimony about Plaintiff's case. Plaintiff says that Dr. Barnes will testify concerning her treatment of Plaintiff in 1993, including Plaintiff's hospitalization at that time "for Post-Traumatic Stress Disorder, major depression and substance abuse[,] with medications Buspar, Zoloft[,] and Mellaril" and Plaintiff's "treatment for flashbacks, regression to age five (5) years old, etc."[26]

Plaintiff provides a list of documents provided to the experts, which include a disability slip, Plaintiff's letter to the Delaware Attorney General, the Complaint in the instant case, and letters from Plaintiff to Defendant and other family members.[27] The remainder of the report includes two sections describing symptoms of Post-Traumatic Stress Disorder and childhood sexual abuse.[28] Again, Plaintiff does not indicate whether the information provided is the opinion of his experts, the opinion of the Plaintiff himself, or from some other source. Plaintiff ends with a description of his damages from the alleged abuse.[29]

---

[22] Plaintiff's Expert Report, Item 166, at 1 (*citing* Super. Ct. Civ. R. 26(b)(4)(A)(i)).
[23] Plaintiff's Expert Report, Item 166, at 2.
[24] "Synopsis" is Plaintiff's term. Plaintiff's Expert Report, Item 166, at 2.
[25] Plaintiff's Expert Report, Item 166, at 2.
[26] Plaintiff's Expert Report, Item 166, at 2.
[27] Plaintiff's Expert Report, Item 166, at 2.
[28] Plaintiff's Expert Report, Item 166, at 3-4.
[29] Plaintiff's Expert Report, Item 166, at 4-5.

## IV. PRESENT MOTIONS

Defendant filed the present Motions on November 26, 2014. In the first Motion, Defendant argues that Dr. Gillum's opinion fails on both relevance and reliability grounds.[30] Defendant argues that Dr. Gillum's opinion is not admissible because it is based on insufficient facts, which the Delaware Supreme Court has held makes an expert opinion irrelevant.[31] According the Plaintiff's Rule 26 expert disclosure, the only materials provided to Dr. Gillum were (1) a disability slip signed by Dr. Barnes, attesting to Plaintiff's total or partial disability from 1993 to 1995, (2) a letter from Plaintiff to the Delaware Attorney General detailing Plaintiff's accusations against Defendant and calling for a criminal investigation, (3) a copy of the Complaint in the instant action, and (4) correspondence from Plaintiff to Defendant and to other family members.[32] Defendant points out that Plaintiff does not indicate that Dr. Gillum ever examined Plaintiff or undertook a review of Plaintiff's medical records, and the only medical document provided to Dr. Gillum was the disability slip, which states only that Plaintiff was at one point treated for depression, PTSD, and alcoholism, but does not mention childhood sexual abuse.[33] Further, the Defendant argues that the report does not demonstrate that Dr. Gillum has applied his expertise to the facts of the instant case; the opinion lists general statements about symptoms of sexual abuse in children and adults but provides no connection to Plaintiff.[34]

---

[30] Motion to Exclude Gillum, Item 197.
[31] Motion to Exclude Gillum, Item 197, at 3 (*citing Perry v. Berkley*, 996 A.2d 1262, 1270 (Del. 2010)).
[32] Motion to Exclude Gillum, Item 197, at 4 (*citing* Plaintiff's Expert Report, Item 166, at 2).
[33] Motion to Exclude Gillum, Item 197, at 4 (*citing* Disability Certification, Exhibit A to Item 197).
[34] Motion to Exclude Gillum, Item 197, at 5.

Defendant argues that Dr. Gillum's opinions do not meet the *Daubert* reliability standard because they lack "the specificity to pass muster under *Daubert*'s 'testability' factor."[35] Further, Defendant argues, there is no indication that the opinions were peer-reviewed, formed independently of litigation, or are widely accepted.[36] Defendant argues that Dr. Gillum's opinions are based upon "unreliable documents crafted by the Plaintiff in support of his own claims"; and, as the Delaware Supreme Court has held, opinions based on unreliable data are themselves unreliable.[37] Defendant concludes that the Court, acting as gatekeeper, must prevent Dr. Gillum's opinions from reaching the jury because they lack an adequate factual foundation and are unreliable and irrelevant to the instant case.[38]

In the second Motion, Defendant argues that Dr. Barnes should also be excluded on relevance and reliability grounds.[39] Defendant argues that Dr. Barnes' opinion is based on insufficient data and is irrelevant because it does not specifically address Plaintiff's allegations of sexual abuse.[40] Defendant acknowledges that Dr. Barnes is alleged to have treated Plaintiff but argues that Plaintiff's Rule 26 disclosure suggests that Dr. Barnes' opinion will be based on the same scant records as were provided to Dr. Gillum.[41] Defendant argues that even if Dr. Barnes also considered her own records from the time Plaintiff was under her care, the totality of the evidence would still be "insufficient for [Dr. Barnes] to form an opinion as to whether the

---

[35] Motion to Exclude Gillum, Item 197, at 5 (*quoting Tumlinson*, 81 A.3d at 1271).
[36] Motion to Exclude Gillum, Item 197, at 5.
[37] Motion to Exclude Gillum, Item 197, at 5-6 (*citing Tumlinson*, 81 A.3d at 1271).
[38] Motion to Exclude Gillum, Item 197, at 6.
[39] Motion to Exclude Barnes, Item 199.
[40] Motion to Exclude Barnes, Item 199, at 4-5.
[41] Motion to Exclude Barnes, Item 199, at 4.

Plaintiff's alleged injuries did in fact occur and whether the claimed damages are legitimate and related to any conduct by the Defendant."[42]

Defendant further argues that Dr. Barnes' opinion does not meet the *Daubert* reliability standard.[43] Defendant says that, while Dr. Barnes' diagnoses of Plaintiff may themselves be testable, the opinion "offers no grounds on which the Defendant's expert could test whether those diagnoses are connected to the Plaintiff's claims in this case."[44] Defendant also challenges Dr. Barnes' opinions because "there is... no indication that Dr. Barnes's opinions were peer reviewed, formed independent of the litigation, or widely accepted."[45]

Plaintiff did not file a Response to either Motion, but he did make reference to these Motions in his "Notice of Serving Motion for Sanctions," filed on December 22, 2014.[46] In a letter dated January 14, 2015 and filed January 26, 2014, the Court notified Plaintiff that he had referenced the Motions without addressing the substance of either Motion and gave Plaintiff until February 12, 2015 to file any argument addressing the substance of the Motions or to supplement his expert disclosures.[47] The same day that the Court's letter was filed, January 26, 2014, the Prothonotary received a new Motion for Sanctions in which Plaintiff addresses the substance of Defendant's Motions to Exclude Plaintiff's proffered experts.[48] The February 12, 2015 deadline has now passed, and Plaintiff has not filed any other Response or supplemented his expert disclosures.

---

[42] Motion to Exclude Barnes, Item 199, at 4.
[43] Motion to Exclude Barnes, Item 199, at 5.
[44] Motion to Exclude Barnes, Item 199, at 5.
[45] Motion to Exclude Barnes, Item 199, at 5-6.
[46] Notice, Item 202.
[47] Letter, Item 203.
[48] Motion for Sanctions, Item 205.

In Plaintiff's January 26, 2014 Motion for Sanctions, Plaintiff argues that Dr. Barnes' testimony will be based on sufficient data as "Dr. Barnes actually examined and treated the Plaintiff for two (2) years" including during an in-patient stay.[49] Thus, argues Plaintiff, it is not the case that Dr. Barnes will be merely relying on documents provided to her by Plaintiff.[50] Plaintiff also argues that Dr. Barnes opinion is relevant even if it only "describes the treatment provided but does not make any connection between that treatment and any conduct on the part of Defendant."[51] In other words, Plaintiff argues that Dr. Barnes' testimony is relevant to demonstrate the injuries that Plaintiff suffered irrespective of their causal source.[52] Plaintiff argues that Dr. Gillum's testimony is admissible as "general causation" expert testimony, even if Dr. Gillum does not opine on Plaintiff's particular case.[53] Citing *Sheehan v. Oblates*, Plaintiff points out that a general causation expert need not have personally examined the alleged victim.[54]

## V. DISCUSSION

Delaware courts have found expert testimony inadequate and worthy of exclusion where the expert report did not demonstrate that the expert had specifically and correctly considered the facts of the present case in forming a proffered opinion. Specifically, Delaware courts have excluded expert testimony where the expert based his opinion on an incorrect understanding of

---

[49] Motion for Sanctions, Item 205, at 2.
[50] Motion for Sanctions, Item 205, at 2.
[51] Motion for Sanctions, Item 205, at 3.
[52] Motion for Sanctions, Item 205, at 3.
[53] Motion for Sanctions, Item 205, at 4.
[54] Motion for Sanctions, Item 205, at 4 (*citing Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247 (Del. 2011)).

10

the facts of the case;[55] where the expert report contained "absolutely no specific facts," the expert failed to describe his methodology, and the report contained only general conclusory statements that injuries of this nature are known to be caused by factors such as Plaintiff has alleged;[56] and where the experts failed to separate out the causal contribution of the defendant's alleged tortious conduct from other events and exposures that might have caused the symptoms.[57] However, the Delaware Supreme Court has also held that where a plaintiff provides a specific causation expert, a court should not exclude the testimony of a general causation expert when the general causation expert's testimony could lay the foundation for and corroborate the specific causation expert's testimony.[58]

In *Perry v. Berkley*, the Delaware Supreme Court affirmed the decision of the trial court excluding the testimony of the plaintiff's medical expert and then dismissing the case due to lack of evidence of causation.[59] The plaintiff in *Perry* alleged that her back injuries had been caused by the motor vehicle accident in question. The plaintiff identified only one medical expert for trial. The expert opined that, given that the plaintiff had not experienced any back pain prior to the accident, the accident caused Plaintiff's back injury.[60] The expert had not personally treated the plaintiff after the accident but instead based his opinion on medical records and the Plaintiff's self-reports.[61] Unbeknownst to the expert at the time of his report, the plaintiff had been treated for back pain prior to the 2005 accident.[62] Since the expert's opinion was premised on the

---

[55] *Perry v. Berkley*, 996 A.2d 1262 (Del. 2010).
[56] *Crookshank v. Bayer Healthcare Pharmaceuticals*, 2009 WL 1622828 (Del. Super. Ct. May 22, 2009).
[57] *Collins v. Ashland*, 2011 WL 5042330 (Del. Super. Ct. Oct. 21, 2011).
[58] *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247 (Del. 2011).
[59] *Perry*, 996 A.2d 1262.
[60] *Id.* at 1265.
[61] *Id.*
[62] *Id.*

incorrect assumption that the plaintiff had not previously experienced lumbar pain, the trial judge excluded the expert's testimony on the grounds that it lacked the proper factual foundation.[63]

In *Crookshank v. Bayer*, the Superior Court granted summary judgment to the defendant after the plaintiff failed to produce an expert who could adequately opine as to causation.[64] The plaintiff in *Crookshank* alleged injuries from an adverse reaction to a prescription drug manufactured by the defendant. After being granted several extensions to identify her expert and produce her expert report, the plaintiff provided an expert report in which the expert opined that the drug in question "is known to cause these types of toxic reactions."[65] The expert concluded, "[i]t is my opinion that [the plaintiff] suffered a serious adverse reaction to the drug, which resulted in a significant permanent injury."[66] The court found the expert opinion inadequate on the grounds that the report contained "absolutely no specific facts" to support the conclusion and did not explain the medical or scientific reasoning on the basis of which the expert arrived at his conclusion.[67] The court criticized the "conclusory" nature of the expert report, which simply stated without explanation that the drug is known to cause toxic reactions such as those allegedly experienced by the plaintiff.[68]

In *Collins v. Ashland*, the Superior Court excluded the plaintiff's causation experts and then granted summary judgment to defendants.[69] The plaintiff was the surviving spouse and personal representative of the estate of a deceased painter who allegedly developed an illness due

---

[63] *Id.* at 1266.
[64] *Crookshank*, 2009 WL 1622828.
[65] *Id.* at *3.
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Collins*, 2011 WL 5042330.

12

to chemicals in defendants' paints.[70] However, the decedent had only been exposed to defendants' paints for nine months out of his twenty-one year career.[71] The plaintiff's experts opined that the decedent's illness had been caused by his occupational exposure to chemicals; however, the experts premised their causation opinions on the decedent's entire twenty-one year career and did not address, specifically, the causal contribution of the nine months when the decedent was exposed to the defendants' products.[72] The court found that the experts had not reliably applied their methods to the specific facts of the case.[73]

In *Sheehan v. Obliates*, the plaintiff offered two experts at trial.[74] The trial court allowed the plaintiff's specific causation expert but excluded the plaintiff's general causation expert.[75] The specific causation expert, Dr. Tavani, had only examined the plaintiff once at the request of his attorneys in the instant case.[76] However, Dr. Tavani conducted a four hour interview with the plaintiff on the basis of which she formed a "multi-axial diagnostic impression."[77] Dr. Tavani provided an affidavit prior to trial in response to the defendant's Motion in Limine to exclude her testimony.[78] In her affidavit, Dr. Tavani concretely explained her methodology and stated that the methodology and terminology that she uses is "generally accepted," "peer reviewed," and "the gold standard" in her profession.[79] Dr. Tavani was able to opine specifically that the

---

[70] *Id.* at *1.
[71] *Id.*
[72] *Id.* at *2.
[73] Id. at *4.
[74] *Sheehan*, 15 A.3d at 1254.
[75] *Id.*
[76] Tavani Affidavit, Tab A to Item 254 in *Sheehan v. Oblates*, CA No. 07C-11-234 JRS.
[77] Tavani Affidavit, Tab A to Item 254 in *Sheehan v. Oblates*, CA No. 07C-11-234 JRS.
[78] Tavani Affidavit, Tab A to Item 254 in *Sheehan v. Oblates*, CA No. 07C-11-234 JRS.

[79] Tavani Affidavit, Tab A to Item 254 in *Sheehan v. Oblates*, CA No. 07C-11-234 JRS.Dr. Tavani executed the sworn affidavit apparently in response to Defendants' challenge of the admissibility of her testimony. Tavani's affidavit is dated October 19, 2009, which is the same day that the plaintiff filed his Response to Defendants' Motion in Limine to exclude Tavani's testimony.

plaintiff's psychological injuries were caused by the alleged abuse.[80] The trial court excluded the plaintiff's general causation expert, Dr. Langberg, on the grounds that "Langberg [had] not personally met with Plaintiff and her opinions [were] not based on any personal knowledge of Plaintiff's condition."[81] The trial court concluded that Dr. Langberg's proffered "testimony regarding damages suffered by the average individual exposed to childhood sexual abuse is not relevant and, therefore, inadmissible... Langberg may be qualified as an expert to testify about the general injuries child sex abuse victims suffer, but these generalized conclusions will not be helpful to determine the damages suffered by Plaintiff in the current case."[82]

The Delaware Supreme Court found that the trial court in *Sheehan* had made a material error in excluding Dr. Langberg's testimony; "Langberg's testimony would have laid the foundation for and corroborated Tavani's testimony about the actual cause of [the plaintiff's injuries."[83] The Court pointed out that, at trial, defendants "repeatedly objected to Tavani's testimony whenever she attempted to explain [the plaintiff's] injuries in relation to the general effects of sexual abuse on childhood development."[84] In the Supreme Court's view, "Tavani's testimony expressly shows how the trial judge's ruling limited her ability to explain [the plaintiff's] injuries."[85]

In the instant case, Plaintiff has not met the burden of establishing, by a preponderance of the evidence, that the testimony of either Dr. Barnes or Dr. Gillum is both relevant and reliable. Plaintiff's description of the subject matter of Dr. Barnes' testimony is extremely brief.[86]

---

[80] Tavani Affidavit, Tab A to Item 254 in *Sheehan v. Oblates*, CA No. 07C-11-234 JRS.
[81] Order, Item 298 in *Sheehan v. Oblates*, CA No. 07C-11-234 JRS.
[82] Order, Item 298 in *Sheehan v. Oblates*, CA No. 07C-11-234 JRS.
[83] *Sheehan*, 15 A.3d at 1255.
[84] *Id.*
[85] *Id.*
[86] Plaintiff's Expert Report, Item 166, at 2.

14

Plaintiff says that Dr. Barnes will testify about her diagnosis and treatment of Plaintiff, but Plaintiff does not make clear whether this diagnosis and treatment was related to the alleged abuse or other life experiences.[87] Like in *Collins*, the proffered expert testimony does not identify if all, or what portion of, the plaintiff's symptoms are attributable to the injury at issue.[88] While Plaintiff suggests that Dr. Barnes' opinion is more robust than Plaintiff's Rule 26 disclosure represents given her extensive treatment of Plaintiff,[89] the Court must keep in mind that it is Plaintiff's burden to provide an adequate Rule 26 disclosure and establish that the proffered expert testimony is relevant and reliable.[90]

Plaintiff has not alleged that Dr. Gillum examined Plaintiff or reviewed Plaintiff's medical records (with the exception of a disability slip, which does not mention sexual abuse but states only that Plaintiff has been treated for depression, PTSD, and alcoholism).[91] The remaining documents that Plaintiff says he provided to Dr. Gillum were all authored by Plaintiff.[92] Plaintiff states only the Dr. Gillum will testify generally about "symptoms and indicators" of childhood sexual abuse but not that Dr. Gillum will apply these theories to Plaintiff's particular case.[93] Like in *Perry*, Dr. Gillum's opinion is based primarily on Plaintiff's

---

[87] Plaintiff's Expert Report, Item 166, at 2.

[88] *Collins*, 2011 WL 5042330 at *2.

[89] Motion for Sanctions, Item 205, at 2. Plaintiff says Defendant's claim that Dr. Barnes opinion is based on insufficient facts is "totally ridiculous because Dr. Barnes actually examined and treated the Plaintiff for two (2) years, including a lengthy hospitalization." Motion for Sanctions, Item 205, at 2. Plaintiff also says that his letter to the Delaware Attorney General, which was attached to his Rule 26 disclosure, "specifically outlined treatment by Dr. Barnes and other mental health professionals for post-traumatic stress disorder from the childhood sexual abuse by the Defendant." Motion for Sanctions, Item 205, at 2. Plaintiff consistently maintains that his psychological symptoms are due to the alleged abuse. However, none of the documents that Plaintiff has provided specifically indicate that Dr. Barnes is prepared to testify to specific causation. *See, e.g.,* Plaintiff's Letter to Attorney General, Exhibit B to Item 195 (describing the alleged abuse and Plaintiff's subsequent behavioral and psychological problems but not indicating that any expert can testify that the abuse caused these problems).

[90] *Kapetanakis*, 2008 WL 3824165, at *3.

[91] Disability Certification, Exhibit A to Item 197.

[92] Plaintiff's Expert Report, Item 166, at 2.

[93] Plaintiff's Expert Report, Item 166, at 2.

15

self-reports; but, as is evident from *Perry*, a plaintiff's self-reports may prove inaccurate.[94] The instant case is unlike *Perry*, where the expert had access to extensive medical records in addition to the plaintiff's self-reports.[95] Like in *Crookshank*, the proffered testimony contains no specific facts about Plaintiff's individual symptoms or situation but merely states general conclusions about the effects of injuries of the type alleged by the plaintiff.[96]

It may well be, as ruled in *Sheehan*, that a general causation expert, such as Dr. Gillum, can testify in this trial. But, Plaintiff has not identified an expert who can testify to specific causation. While the Court in *Sheehan* found that the trial court erred in not allowing a general causation expert to testify when the general causation expert's testimony would complement that of the specific causation expert, the Plaintiff cannot establish the relevance of the general causation testimony in the absence of a reliable specific causation expert. Like in *Collins*, Plaintiff has not provided any evidence that his proffered experts can or will testify that his injuries were caused by Defendant's alleged conduct rather than other factors.

The Court finds that, based on the current record, there is insufficient evidence to permit Plaintiff's proffered experts to testify. Plaintiff has not shown that either expert is equipped to testify to specific causation in the instant case. The Court, on the record before it, would be required to grant Defendant's Motions; but in consideration of Plaintiff's difficulties in communicating with experts and his apparent indigence,[97] the Court will give Plaintiff additional time to supplement the record and provide the required Rule 26 expert disclosure establishing the existence of a specific causation expert in this case. The Court **DEFERS** final decision until

---

[94] The plaintiff in Perry did not tell the expert that she had been treated for pain similar to that caused by the alleged injuries prior to the accident in question. *Perry*, 996 A.2d at 1265.

[95] *Id.*

[96] *Crookshank*, 2009 WL 1622828 at *3.

[97] Motion to Appoint Expert, Item 82, at 2.

after receipt and review of Plaintiff's supplemental material or passage of 90 days without further submission.

## VI. CONCLUSION

For the foregoing reasons, decision on Defendant's Motion to Exclude the Testimony of Dr. Gillum and Motion to Exclude the Testimony of Dr. Barnes is hereby **DEFERRED**. Plaintiff shall supplement the record to identify a specific causation expert and the content of this expert's testimony in accordance with the requirements of Rule 26. Plaintiff has 90 calendar days from the issuance of this opinion to comply.[98]

**IT IS SO ORDERED.**

M. Jane Brady
Superior Court Judge

---

[98] The Court notes that such an extension will necessarily affect the trial date previously set in this matter. A new trial date will be established upon resolution of the within matters.